[Crim. No. 3745. Second Dist., Div. Three. Dec. 16, 1943.]

THE PEOPLE, Respondent, v. FRANK J. WOHNON, Appellant.

Philip S. Schutz and Alexander L. Oster for Appellant.

Robert W. Kenny, Attorney General, and T. G. Negrich, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendant was convicted of burglary in the second degree. He admitted that he had been convicted previously of burglary, a felony, and that he had served a term therefor in the penitentiary. He appeals from the judg-

ment and the order denying his motion for a new trial. The record does not show that he moved for a new trial, but it will be assumed that such motion was made.

■ Defendant's contention that the evidence was insufficient to sustain the judgment cannot be upheld. The evidence shows as follows: The place of business of Willumsen Tire Company was locked and the skylight was closed about 5:45 p. m. on February 1, 1943. The next morning the skylight was open and a steel rolling door at the back of the building, which could not be raised from the outside by the chain gear, was open about four feet. A pencil which had been left in the pocket of an employee's shirt, and a pocket knife which had been left on a workbench, were missing. A pencil and knife found on the defendant when he was searched by police officers were like those which had been taken from the building. An identification badge, issued to defendant as an employee of the Alloy Steel and Metals Company, was found on the morning of February 2, 1943, in the alley about five feet from the steel rolling door.

An employee of the tire company, George S. Wissmann, whose testimony given at the preliminary hearing was read at the trial, testified that the pencil shown to him [while he was a witness and which was taken from the defendant] was his pencil and the one he had left in the building in the pocket of his shirt on February 1, 1943; and that he had not given defendant permission to take the pencil.

Another employee of the tire company testified that the knife shown to him [while he was a witness and which was taken from the defendant] was his knife and the one he had left in the building on a workbench on February 1, 1943, and that he (witness) had carried the knife, chalk, and tire caps in his pocket.

A police officer, who was a forensic chemist, testified that the chalk on the knife was the same kind of chalk as that found in the pocket of the witness whose knife was missing after the burglary; that certain chalk, submitted to him for inspection by counsel for defendant on cross-examination [which chalk was taken from the place where defendant had been employed], was not the same kind of chalk as that found on the knife.

Defendant's sister testified that defendant was at her home from 6 p. m. on February 1, 1943, until 6 a. m. on February

2, 1943, and thereafter until they both left to go to a clinic where she had an appointment at 8 a. m.

Defendant testified that he did not enter the premises of the tire company; that he was not discharged but was taking some time off; that he was at his sister's home all night on February 1, 1943, and went to a clinic with her the next morning; that he was arrested when he went to the Alloy Steel and Metals Company to get his check; that the pencil and knife were in his possession on February 3, 1943; that he obtained the pencil at a service station; that the knife was given to him by his brother-in-law, who went into the army; that the badge was his and he lost it on January 26th when he left his coat on a counter at a cafe, while he was fixing a flat tire, and when he returned to get his coat the badge was gone. On cross-examination he said "the timekeeper told me I was discharged so I went for my check"; and that he did not report the loss of the badge to his employer because he did not intend to go back to work. The evidence was sufficient to sustain the judgment.

Defendant's next contention,—that the court erred and abused its discretion in permitting the testimony of a witness given at the preliminary hearing to be read in evidence, cannot be sustained. He argues that due diligence to secure the attendance of the witness was not shown. The trial was on April 12, 1943. A process server employed by the district attorney testified, concerning efforts to serve a subpoena upon the witness, as follows: that, having been given a subpoena to serve upon George S. Wissmann, he went on March 10, 1943, to 718 East 8th Street, Los Angeles, [the place where the burglary occurred, and where Wissmann had been employed] but Wissmann was not there; that, being told that he might be at 2931 Denby Street [the residence address of Wissmann as shown by his testimony at the preliminary hearing], he went to that address but Wissman was not there; that, being given another address, which was "Modesto, at the hotel," a foreign subpoena was sent to the sheriff of Stanislaus County at Modesto; that he, the process server, had not been able to locate any further information as to the whereabouts of Wissmann. There was no cross-examination of the process server by the defendant. The certificate of the sheriff of Stanislaus County on the foreign subpoena stated "that George S. Wissmann was paid off on April 1st, and did not state where he was going." Defen-

dant objected to the reading of the testimony of Wissmann given at the preliminary hearing upon the ground that there was no foundation therefor. The trial court ruled that the witness was not available and that due diligence had been used to obtain the witness.

The deposition of a witness given at a preliminary examination before a committing magistrate may be read at the trial, if the defendant cross-examined or had the opportunity to cross-examine the witness, ''upon its being satisfactorily shown to the court that he [the witness] . . . cannot with due diligence be found within the state. . . .'' (Pen. Code, sec. 686.)

The witness (Wissmann) was cross-examined by defendant's counsel at the preliminary examination. Whether or not due diligence has been exercised, in efforts to obtain the attendance of a witness at a trial, is a matter addressed to the discretion of the trial court upon all the facts and circumstances. (*People* v. *Ramos* (1921), 52 Cal.App. 491, 492 [199 P. 544]; *People* v. *Howard* (1936), 16 Cal.App.2d 349, 351 [60 P.2d 336]). Among the facts and circumstances to be considered in determining the issue of due diligence are: the length of time during which efforts were made to find the witness; and, the importance of the testimony of the witness. The process server began his efforts to find the witness more than a month before the trial. The testimony of the absent witness related to the identification of the pencil which was taken from the defendant. The ownership of the pencil was one of several circumstances tending to show defendant's guilt. The trial court did not abuse its discretion in permitting the testimony of Wissmann to be read.

The last contention of defendant, that the court erred in failing to instruct the jury fully on the law of circumstantial evidence, cannot be sustained. He asserts that since the evidence was wholly circumstantial the court should have further instructed the jury as follows, even though no request therefor was made by defendant: ''Where circumstantial evidence is relied upon, the circumstances must be consistent with the hypothesis that the defendant is guilty and at the same time inconsistent with any other rational conclusion.''

The court gave the following instruction: ''There are two classes of evidence recognized and admitted in courts of justice, upon either of which juries may lawfully find an accused

guilty of crime. One is direct evidence, which is the direct testimony of any eyewitness to a transaction, and the other is circumstantial evidence, which includes all evidence other than that of an eyewitness. Such evidence may consist of any acts, declarations or circumstances admitted in evidence tending to prove the crime charged, or tending to connect the defendant with the commission of the crime.

"If upon consideration of the whole case you are satisfied to a moral certainty and beyond a reasonable doubt of the guilt of the defendant, you should so find, irrespective of whether such certainty has been produced by direct evidence or by circumstantial evidence. The law makes no distinction between circumstantial evidence and direct evidence in the degree of proof required for conviction, but only requires that the jury shall be satisfied beyond a reasonable doubt by evidence of either the one character or the other, or both."

The court also gave the following instruction: "If the evidence in this case, as to any particular count, is susceptible of two constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the defendant, and the other to his innocence, it is your duty, under the law, to adopt that interpretation which will admit of the defendant's innocence, and reject that which points to his guilt. You will notice that, in this instruction, this rule of law is made applicable to cases in which there are two opposing interpretations, each of which appears to you to be reasonable. This rule of law does not apply in a case where there are two opposing constructions sought to be placed upon the evidence, one of which appears to you to be reasonable and the other to you appears to be unreasonable. In the latter case it would be your duty, under the law, to adopt the reasonable construction and reject the one which, in your judgment, appears to be unreasonable."

The following statement from *People* v. *Wray* (1942), 56 Cal. App.2d 347 [132 P.2d 246], at page 351, is applicable here: "Appellant does not attack the instructions given on circumstantial evidence but contends that an additional instruction requested by appellant should have been given also. The requested instruction was to the effect that the circumstantial evidence must be such as cannot be reconciled with any reasonable hypothesis of defendant's innocence. The circumstantial evidence in the case at bar so strongly pointed to guilt and was so inconsistent with any reasonable theory of inno-

cence that no further instruction on the subject of circumstantial evidence was necessary." The instruction above quoted which appellant asserts should have been given, to the effect that the circumstances must be consistent with the hypothesis of guilt, was unobjectionable, but in view of the other instructions which were given and the strength of the evidence the failure to give it did not result in a miscarriage of justice.

The judgment and order denying the motion for a new trial are affirmed.

Desmond, P. J., and Shinn, J., concurred.